## HENNING v. W. S. HALLMAN CO.

(Circuit Court of Appeals, Seventh Circuit. December 17, 1924.)

No. 3400.

Sales ⟷384(7)—Measure of damages for breach of contract by buyer stated.

For the unjustified breach of a contract for the purchase of a quantity of salt pickles, the buyer *held* liable for the difference between the contract price and the price at which the pickles were sold after due notice, upon the buyer's definite refusal to accept them.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by the W. S. Hallman Company against F. W. Henning, doing business as the F. W. Henning Company. Judgment for plaintiff, and defendant brings error. Affirmed.

H. N. Bell, of Chicago, Ill., for plaintiff in error.

James Nicholas Lorenz, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The parties to this litigation in April, 1921, entered into a contract for the purchase and sale of 500 45-gallon casks of salt pickles of a designated quality, for which the purchaser agreed to pay $2.50 per bushel. It was further provided that "the buyer to furnish cooperage free of cost to seller. Quality to be good, sound, straight pickles. * * * Shipment: Buyer's option to February 1, 1922. Warren B. Jones, Broker."

On January 26, 1922, plaintiff shipped two barrels of pickles as samples, and the broker notified defendant thereof, - adding: "They will fill your order from Eau Claire, Mich., which is to be shipped by February 1st, and ask me to caution you to be sure and send the barrels to Eau Claire, Mich., as they will equalize freight and ship from Eau Claire."

Defendant replied on January 30: "The two. sample casks vat run pickles in brine were received today from W. S. Hallman Company. We have examined the stock, and same is not satisfactory, and we cannot accept the vat runs." Defendant never exercised its option under the shipment clause of the contract, and never sent plaintiff the cooperage.

This action was brought to recover the contract price less the amount ($1.45 per bushel) for which pickles of this quality were sold by plaintiff to Reid, Murdoch & Co., on March 24, 1922. Upon the trial there was a dispute in the testimony as to the quality of the pickles, and the court found in plaintiff's favor. Judgment was thereupon rendered for the difference between contract and resale price. In view of this finding as to the quality of pickles tendered, which we accept, the sole and only question is one of damages.

Defendant contends that its letter of January 30 constituted a rejection of the shipment on its part, and its liability was to be determined as of that date. We·do not believe the evidence would support a finding that the rights and liability of the parties became fixed at this date. Certainly there·is evidence to the contrary. Plaintiff shipped· two barrels as samples prior to February 1, and although defendant was not justified in rejecting these samples, yet the subsequent correspondence and negotiations indicated that plaintiff, at least, was endeavoring to persuade defendant to live up to its contract and was somewhat encouraged by defendant. There was nothing in the contract calling for the shipment of ·samples, but defendant was, to send plaintiff the necessary barrels within which to ship the pickles.

On March 6 the broker, who evidently was acting for both parties, wrote plaintiff advising him that defendant had requested him "Not to ship the pickles, as they are slippery, and he cannot take a chance of shipping them into Southern territory, where it gets warm early in the season, * * * and he asked Mr. Henning to come· over to Chicago and go over the matter with him."

Jones testified: "Mr. Henning led· me to think that * * * about as late as the 8th of March he would go with me over there to examine the goods and adjust the thing then. Then, on the 16th of March, I endeavored again to get him to comply with the contract. * * * Mr. Hallman had told me to call his attention to the fact that the contract provided for arbitration, and if there was any dispute, and if it was not ·agreeable for him to accept the plan that Mr. Hallman had outlined of having an independent person come over and examine the pickles for him, if he didn't want to come, Mr. Hallman bearing the expense. if the pickles were at fault, and Mr. Henning paying the expense if that party decided the pickles were as per contract; and on or about the 16th of March, Mr. Henning declined, said he wouldn't arbitrate, as there was nothing to arbitrate, and he would not take the goods."

On March 17th, plaintiff wrote defendant: "We inclose herewith invoice and warehouse receipt for salt pickles purchased on your contract April 26 and May 23, 1921. We are billing you these goods as they are sold f. o. b. Coloma, Mich.; you not having furnished the barrels according to contract. * * * We want to co-operate with you all ·we can, have held these pickles as long as it is possible, and if we do not receive remittance or a satisfactory arrangement to pay for same, we wish to notify you that we will sell the pickles covered by this invoice and look to you for any loss that may incur. We hope this will not be necessary; we waited, as long as is possible. The insurance and storage expires March 22, 1922."

· Following this letter, three days later, plaintiff again wrote defendant: "We should have stated in the letter mentioned [March 17] that we will sell the goods for account of whom it may concern on March 24, 1922, unless we have remittance, or some arrangement is made by that date to take care of the matter. Further notice of sale will not be given, though we will instruct our broker to give you an opportunity to bid on the goods."

To this letter defendant replied March 23: "We beg to return your inclosures from your letter of March 22d as we cannot accept them."

From the foregoing correspondence and oral testimony, the court was justified in finding that March 23, 1922, was the date when defendant breached its contract. The resale was duly made in the ordinary course of business, after due notice to prospective bidders, on March 24, and the price $1.45 per

barrel, was by the court found to be the best obtainable price. Under these circumstances, we agree with the District Judge that the liability of defendant was $1.05 per barrel, plus interest. 24 R. C. L. 109.

The judgment is affirmed.